**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-60456
Summary Calendar
_____

CUTBERTO IBARRA-PINEDO,

Petitioner,

VERSUS

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

_____

Petition for Review of
Order of Immigration and Naturalization Service
_____

June 14, 1996

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Cutberto Ibarra-Pinedo petitions for review of the Board of Immigration Appeals (BIA) order finding him deportable and denying his requests for suspension of deportation. We deny the petition.

I.

Petitioner, a Mexican citizen, was granted lawful permanent residence status in the United States in 1990. He lives in Lufkin, Texas with his family and works at a local factory. Two of his children are United States citizens but his wife Amelia and his daughter Griselda are not. However, Amelia and Griselda have

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

obtained permission to live in the United States through the Family Fairness Program. See Section 301(a) of the Immigration Act of 1990.

On January, 16, 1993, a Saturday, Ibarra traveled from Lufkin to the border and crossed into Mexico. He intended to return the next day with his daughter, a United States citizen, so that she could attend school on Monday. Ibarra's daughter and his wife had been in Mexico for fifteen days, tending to his wife's father who was dying.

Upon arriving in Mexico, Ibarra learned that his wife had arranged to illegally re-enter the United States that night and had found two men to help her across the Rio Grande. Apparently, she had left the United States too suddenly to make arrangements for a legal return. When Ibarra saw that the men she had found to accompany her were drunk, he tried to dissuade her from going with them. But she refused to stay in Mexico alone. Petitioner testified that he then decided to help her across the river himself because he was afraid of what the men might do to her. Leaving his daughter in Mexico, Ibarra crossed the river with his wife and was arrested by border patrol agents on January 17, 1993.

On January 18, 1993, the Immigration and Naturalization Service (INS) issued an Order to Show Cause why Petitioner should not be deported as an alien who had entered the United States without inspection, a violation of 8 U.S.C. § 1251(a)(1)(b). The Immigration Judge (IJ) found that Ibarra had entered illegally by not presenting himself for inspection and that he was deportable on this charge. She also determined that Petitioner was entitled to

2

neither suspension of deportation, under 8 U.S.C. § 1254(a), nor voluntary departure, under § 1254(e), because he had assisted his wife in entering the United States illegally.[1] He therefore lacked the "good moral character" required under both provisions.

Ibarra appealed to the Board of Immigration Appeals (BIA). He argued that he had not made an "entry" because his departure was brief, casual, and innocent and did not interrupt his permanent residence. He further argued that the IJ's determination that he had knowingly aided his wife in illegally entering the United States was not supported by clear and convincing evidence. Finally, even if he had entered the United States and had assisted his wife in doing so, Ibarra contended that, under 8 U.S.C. § 1182(d)(11), he was eligible for a waiver of the application of § 1182(a)(6)(E)(I), the provision rendering him excludable for alien smuggling. This waiver, in turn, functioned as a waiver of the finding of lack of good moral character under § 1101(f)(3). Therefore, argued Ibarra, he was statutorily eligible for suspension of deportation.

The BIA dismissed Ibarra's appeal. It determined that Ibarra had made an illegal entry within the meaning of § 1101(a)(3) because, by aiding his wife to illegally enter the United States, he had meaningfully interrupted his permanent residence. Moreover, by meaningfully interrupting his residence, Petitioner could not establish the seven years of continuous physical presence in the

---

[1] Having concluded that Ibarra was statutorily ineligible for suspension of deportation, the IJ declined to address whether the Petitioner had made an "entry" in violation of the Immigration and Nationality Act.

United States required to qualify for statutory suspension of deportation under § 1254(a). Finally, the BIA concluded that Ibarra was not eligible for a § 1254(e) voluntary departure because he had admitted to helping his wife illegally cross the Rio Grande. The BIA rejected Ibarra's argument that a waiver under § 1182(d)(11) applied to waive a finding of lack of good moral character under § 1101(f).

We review the BIA's factual conclusions for substantial evidence and will affirm its decision unless the evidence compels a contrary conclusion. Carbajal-Gonzalez, 78 F.3d at 197. Its legal conclusions we review de novo. Id. However, we accord deference to the BIA's interpretation of immigration statutes. Id.

## II.

Ibarra presents two general arguments in his appeal. He contends that he is not eligible for deportation because, on January 17, 1993, he did not effect an "entry" into the United States within the meaning of 8 U.S.C. § 1101(a)(13) and Rosenberg v. Fleuti, 374 U.S. 449 (1963). In the alternative, he claims that the BIA erred when it declared him statutorily ineligible for suspension of deportation on grounds that his participation in alien smuggling precluded the Board from finding him to possess the good moral character required for this relief. Ibarra challenges the denial of suspension of deportation in three ways. First, he argues that the BIA's finding that he assisted his wife to enter the United States in violation of 8 U.S.C. § 1182(a)(6)(E)(I) is not supported by substantial evidence. He next contends that he

4

could not have been found in violation of 8 U.S.C. § 1182(a)(6)(E)(I) because he was never charged with the offense in a charging document.  Therefore, he had no notice of the charge. Finally, Petitioner argues that the BIA erred in ruling that a waiver under 8 U.S.C. § 1182(d)(11) does not remove a finding of lack of good moral character.  We address each in turn.

A.

An alien who enters the United States without inspection is deportable under 8 U.S.C. § 1251(a)(1)(B).  This provision, however, requires that a resident alien do more than simply cross the border without inspection.  He must make an "entry" within the meaning of 8 U.S.C. § 1101(a)(3).  Carbajal- Gonzalez, 78 F.3d at 197.  Ibarra argues that he did not effect such an "entry." Therefore, he is not deportable.

The Supreme Court has held that a resident alien only effects an "entry" under § 1101(a)(3) if "he intended to depart in a manner 'meaningfully interruptive'" of his permanent residence.  Rosenberg v. Fleuti, 374 U.S. 449 (1963)).  To determine whether a meaningful interruption has occurred, Fleuti requires that we carefully balance several factors, among them "(1) the length of the alien's absence from the United States; (2) whether the alien had to procure travel documents for the trip; and (3) the purpose of the visit, with an emphasis on whether the purpose was contrary to immigration policy."  Carbajal-Gonzalez, 78 F.3d at 197 (citing Fleuti, 374 U.S. at 461-62).  These factors, however, are not exhaustive.  Id.  More recently, we have recognized that a resident alien's fully consummated intent to actively engage in alien

5

smuggling is an extremely important consideration.  See id. at 200 (explaining Laredo-Miranda v. I.N.S., 555 F.2d 1242 (5th Cir. 1977)).  That this intent is formed after the alien's departure from the United States is irrelevant.  Id.

Although a number of these factors weigh in Ibarra favor, the BIA did not err in dismissing his appeal.  Petitioner planned only a short trip to Mexico; he intended to stay there just one night.  The record, moreover, contains no evidence that he was required to obtain travel documents.  On the other hand, the record clearly demonstrates a fully consummated intent to engage in alien smuggling.  Ibarra testified that he knew his wife could not cross the border legally and that to assist her in doing so he would have to break the law.  Under our decision in Laredo-Miranda, therefore, Ibarra effected an "entry" within the meaning of § 1101(a)(3).  See Laredo-Miranda, 555 F.2d at 1245-46 (holding that a lawful resident alien who had crossed the border to dine with his girlfriend and who decided to wade the Rio Grande only upon discovering he had forgotten his green card meaningfully interrupted his permanent residence status when he assisted a group of aliens who were attempting to cross the river at the same point); see also Carbajal-Gonzalez, 78 F.3d at 199-200.  The BIA did not err in holding him deportable under § 1251(a)(1)(B).

B.

Ibarra also challenges the BIA's ruling that he is not eligible for suspension of deportation under § 1254(a).  That provision requires an alien to establish that he is a "person of good moral character."  Section 1101(f) defines "good moral

6

character."  In relevant part it states:

> For purposes of this chapter . . . No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . a member of one or more of the classes of persons, whether excludable or not, described in paragraphs . . . (6)(E) . . . of section 1182(a) of this title . . . if the offense described therein, for which such person was convicted, or of which he admits the commission, was committed during such period. . . . The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

Paragraph (6)(E) of section 1182(a) lists classes of "excludable aliens."  Among the excludable are "smugglers," described as "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is excludable."  § 1182(a)(6)(E)(I).

Under this statutory scheme, Ibarra is not eligible for suspension of deportation if he assisted his wife in illegally entering the United States.  He argues, therefore, that the BIA finding that he participated in smuggling is not supported by substantial evidence.  As the IJ pointed out, however, the evidence that Ibarra assisted his wife in illegally entering the United States is "overwhelming."  The Petitioner admitted to accompanying her so that she would not be forced to rely on assistance from two men whom he considered drunken and untrustworthy.  Ibarra assisted his wife in crossing the river, and assistance is all that is required to violate § 1182(a)(6)(E)(I).

Ibarra also suggests that he should not have been found excludable under § 1182(a)(6)(E)(I) because he was never charged

7

with smuggling in a charging document.  This argument is specious.  Section 1101(f) requires only that Petitioner admit to participation in smuggling.  More importantly, Ibarra failed to present this argument to the BIA; therefore, it is not properly before us.  See Mamoka v. I.N.S., 43 F.3d 184, 187 (5th Cir. 1995).

Finally, Ibarra contends that, even if he is technically excludable under § 1182(a)(6)(E)(I), he is eligible for a waiver of this exclusion under § 1182(d)(11).  This waiver provision provides:

> The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (I) of subsection (a)(6)(E) of this section in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who is otherwise admissible to the United States as a returning resident under section 1182(b) of this title and in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title (other than paragraph (4) therefore) if the alien has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and not other individual) to enter the United States in violation of law.

§ 1182(d)(11).  Petitioner argues that this provision waives a finding of lack of good moral character under § 1101(f)(3) because it "waives application" of § 1182(a)(6)(E)(I), thereby wiping out all negative legal consequences of that provision.  One of those consequences is, of course, the requirement that INS consider all individuals who admit to smuggling described in § 1182(a)(6)(E)(I) as persons lacking in good moral character.  See § 1101(f)(3).  Petitioner contends, therefore, that the BIA erred in ruling him statutorily ineligible for suspension of deportation under § 1254(a) because it did not apply the waiver provision to extinguish

8

the finding of lack of good moral character.  The INS responds that the waiver provision of § 1182(d)(11) does not affect a good moral character determination under § 1101(f)(3).

The plain language of § 1101(f)(3) supports the BIA's interpretation of the statute.  Section 1101(f)(3) states that, "whether excludable or not," no person who is described in §§ 1182(a)(2)(D)(prostitution and commercialized vice), 6(E)(smuggling), and 9(A)(polygamy) "shall be regarded as . . . a person of good moral character."  The key words are "whether excludable or not."  The waiver under § 1182(d)(11) provides Ibarra with a strong argument that he is not "excludable."  However, under the terms of § 1101(f)(3), that fact that he is not excludable does not make him a person of good moral character and thereby eligible for suspension of deportation.  The BIA did not err in declaring Petitioner ineligible for suspension of deportation.

III.

For these reasons, we dismiss the petition.

DISMISSED.